UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Nathan C. Johnson and Dorothy J. Johnson,<br>      Plaintiffs<br><br>  v.<br><br>Matthew P. Franks, Ibrahim M. Ramirez, and City of Rock Island, Illinois,<br>      Defendants | Case No.08-4075 |

### ORDER and OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court are three motions for summary judgment (#36, 37 and 38), one filed by each Defendant. Those motions are fully briefed and I have carefully considered the arguments and evidence. As stated herein, the motions are GRANTED IN PART AND DENIED IN PART.

### JURISDICTION

This case asserts claims arising under 42 U.S.C. 1983. The case was originally filed in state court in Rock Island County, Illinois. It was removed by the Defendants pursuant to 28 U.S.C. 1441(b), which allows removal without regard to the citizenship of the parties of any case founded on a claim or right arising under the Constitution or laws of the United States. This case, being such a case, is properly before this Court.

### SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

1

Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). "Inferences that are supported by only speculation or conjecture will

not defeat a summary judgment motion." McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. Waldridge, 24 F.3d at 922. Thus, as Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). See also, Local Rule CDIL 7.1(D).

Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence tending. First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(when the moving party has met its burden, non-moving party must do more than show some "metaphysical doubt " as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. If the non-moving party fails to make a

showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

**UNDISPUTED FACTS**

The following statement of the undisputed facts in this case is taken from the parties' statements of undisputed facts, the responses and replies thereto, and the evidence submitted in support and in opposition thereto.

Plaintiffs, Nathan and Dorothy Johnson are a married couple who, at the relevant time, lived on 15th Street in Rock Island. They had resided in Rock Island for over 30 years. Nathan, a black man, is now 64 years old. At the time of the events leading up to this lawsuit, he had no criminal record and had never been arrested. He owned two guns, a .380 automatic and a .45 automatic, grey and black in color, on May 13, 2007. The car he owned was a 1994 black Buick Regal.

On May 13, 2007, Nathan found Johnnie Henderson sitting on a couch in front of the TV in his home. Henderson, an acquaintance of Nathan's daughter, called Nathan a name, and Nathan ordered him to leave the house.

At about 2:30 in the afternoon on that same day, Nathan drove his car from his residence to a Walgreens pharmacy, located near the intersection of 11th and 31st. On his way there and again on his way back home, he drove past a residence on 12th Street. Both times, he saw Johnnie Henderson on the porch of that residence (which he believed to be Henderson's mother's home) with three other people[1]. Nathan did not know any of the other people. As Nathan neared that residence on his trip

---

[1] During his deposition, Nathan stated that he saw Henderson with "three other fellows." When he was talking to the police on May 13, he was not specific as to the gender of these three people. This difference will prove important.

back home, he saw Henderson throw his hands up. Nathan gestured at Henderson, flicking his hand or pointing his finger.

The individual Defendants, Matthew Franks and Ibrahim Ramirez, are police officers employed by the City of Rock Island's Police Department. On May 13, they were notified by the dispatcher of a report that there was a man with a gun in the vicinity of 12th Street and 12th Avenue in Rock Island. The following description of the ensuing events may not be in precise chronological order, as the parties dispute or are unclear about when specific events occurred in relation to other specific events.

Officer Franks responded to the complaining party's residence. There, a woman named Gloria Gibson told him that a black male, about 50 years old with the first name of "Nate" had been driving north on 12th Street in a black and gold vehicle when he pointed a gun at the people on her porch. Gibson is Johnny Henderson's sister; she told Franks that she and her teenaged daughter Chastity had been on the porch and had seen Nathan point the gun. Chastity told Franks the same thing. Both women described the gun as a black handgun.

Franks was familiar with Johnnie Henderson and his family, as he had responded to prior calls at their residence. Franks was also aware that there was an outstanding warrant for Henderson's arrest.

Officer Ramirez went to Nathan's house and told him about the complaint he had received. Nathan denied Gibson's charge that he had pointed a gun at the people on the porch. Ramirez said (according to Nathan) that Nathan did not look like the kind of person who would act like that. Ramirez asked Nathan to step outside. Franks had returned to the Johnson home. Franks searched Nathan's car and then his person. He neither asked for nor received a consent for this search. Franks

5

also asked Nathan if there were weapons in the car. Nathan responded that there was no gun in his car, although there were two guns in the house.

Nathan told Ramirez that neither Gloria nor Chastity had been on the porch when he saw Johnnie Henderson, insisting that there were three men with Henderson on the porch at that time. Dorothy Johnson told Ramirez about the incident earlier in the day, when Nathan had kicked Henderson out of their house, and opined that Henderson and his family had concocted this story to get even with Nathan. Dorothy also told Ramirez that Gloria Gibson had been caught having an affair with a relative of the Johnson's and she thought there might have been some retaliatory motive in her identification of Nathan. At some point, Ramirez is alleged to have admitted that Henderson's story appeared to be "falling apart."

Ramirez handcuffed Nathan behind his back. When Nathan complained that they hurt his shoulders and wrists, Ramirez then removed the cuffs and re-cuffed Nathan in front. According to Nathan, Ramirez told him that he wasn't under arrest; he was just being detained. He was then taken to the sidewalk along the street in front of his home. Franks drove Gloria to the Johnson residence where she observed Nathan from the vehicle. She positively identified Nathan Johnson as the man who had pointed the gun at her earlier. Franks then transported Chastity to the Johnson residence. She too was able to observe Nathan, and she too identified him and his car.

Meanwhile, Ramirez talked to Dorothy about Nathan's statement that he owned 2 guns. Dorothy went back inside her home, and Ramirez followed her. They went upstairs to Nathan's bedroom. She showed him where Nathan's two guns were and either Ramirez or Dorothy retrieved them. Each gun was stored separately in a sock beneath the mattress. Franks never entered the Johnson home.

Nathan was then placed in a squad car and taken to the Rock Island County Sheriff's Department, where he was charged with aggravated assault and unlawful use of a weapon. He was not read any Miranda warnings or told what the charges were. He posted bond several hours later. On June 11, which was the date he had been told was his first appearance on those charges, Nathan learned that no criminal complaint had been filed. On Augusts 14, he learned that the State's Attorney was not pursuing charges against him.

The Johnsons then filed a complaint in state court. This complaint alleges Fourth Amendment claims of arrest without probable cause, unreasonable search and seizure, and malicious prosecution. Each federal claim is accompanied by a state law claim for indemnification against the City pursuant to 745 ILCS 10/9-102. The case was removed to this Court.

## MALICIOUS PROSECUTION

In their response to the pending motions for summary judgment, Plaintiffs concede that the malicious prosecution claim fails. Accordingly, the motions for summary judgment as to Count III are granted.

## FAILURE TO READ MIRANDA RIGHTS

In their response to the pending motions for summary judgment Plaintiff's "begrudgingly concede that summary judgment is appropriate" as to this claim. Accordingly, the motions for summary judgment as to Count IV are granted.

## UNLAWFUL ARREST

Both officers assert that they are entitled to qualified immunity as to this claim. That issue is properly articulated, not as to whether the officers actually had probable cause to arrest Nathan, but rather whether the officer's belief that he had probable cause was objectively reasonable, in light

of clearly established law and the information he possessed. Hunter v. Bryant, 502 U.S. 224, 227 (1991); Sornberger v. City of Knoxville, 434 F.3d 1006, 1016 (7th Cir. 2006).

Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the law had been broken. Hunter, 502 U.S. at 228. But this case also raises the question whether, and if so, the extent to which an officer has a duty to investigate further before making an arrest.

This issue was thoroughly discussed in a Seventh Circuit case decided after the pending motions were fully briefed. In Sow v. Fortville Police Dept., - F.3d -, 2011 WL 477050, 6 (7th Cir. 2011), the plaintiff had purchased a money order in his home town for $1000 to make a purchase of $775 in another town. The vendor could not make change for the money order and directed plaintiff to the local post office. The postal clerk believed the money order was fake. Her supervisor was consulted and she told him they did not have enough cash to negotiate it. They gave him directions to another post office in a neighboring town. Meanwhile, another employee had obtained a description of his vehicle. When plaintiff left, they called the police.

The responding police officer was filled in on this information and passed it along to the neighboring police department. Plaintiff's car was stopped and he was questioned. Eventually the original officer arrived on the scene, looked at the money order and agreed it looked fake. He asked Plaintiff for a receipt for it. Plaintiff was unable to produce one. He did, however, have another money order that he had purchased on the same date and at the same time, and he had a receipt for that one. The receipt included a telephone number for the post office where it had been purchased, but the officer failed to call. Plaintiff was arrested.

8

Plaintiff sued, in part for false arrest. He claimed that the officer "intentionally disregarded readily apparent and pertinent information" that, if it had been further investigated, would have negated any reasonable belief in probable cause. The Seventh Circuit disagreed, stating, "An officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation, but once an officer has established probable cause, he may end his investigation. The Fourth Amendment imposes no duty to investigate whether a defense is valid." 2011 WL 477050, at 6.

In reaching that decision, the Court noted that the officer had received his apparently truthful and accurate information from various reliable sources. "When an officer receives information from a third party whom it seems reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest. Id. Moreover, the information the officer received from others was consistent with his own observations about the plaintiff's conduct and about his failure to produce the receipt. Id. Under all of these circumstances, the officer had probable cause.

Similarly, in McBride v. Grice, 576 F.3d 703 (7th Cir. 2009), the complaining witness told the officer that her employer had hit her in the head. The officer saw that her eye was swollen and that she had a scratch on her forehead. The scuffle was recorded by two security cameras. The officer watched one of them and saw the two physically struggling. At that point he arrested the employer. The employer insisted that if the officer had watched the other video, he would have seen exonerating footage. The Seventh Circuit once again noted that, while an officer should pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation, once probable cause is established based on "information from the putative victim if the officer reasonably believes that the victim is telling the truth," then there is no need to investigate

9

further. Id. at 707.

The question presented here is whether the facts[2] before Ramirez and Franks were sufficient to lead a prudent man to believe, without further investigation, that Nathan Johnson had pointed a gun at people on the porch while he was driving down 12th Street , or whether Ramirez and Franks had an obligation to pursue further reasonable avenues of investigation.

What did these two officers know? They did know that Nathan and his car matched the description given by the complaining witness and another witness, both of whom had positively identified Nathan Johnson as the person in the car. They also knew that Nathan Johnson owned two guns, although neither of them had been found in the search of Nathan's car.

The problem is that the officers had other information that cast significant doubt on the reliability of the two witnesses. The officers had been told by both Nathan and Dorothy that there were bad feelings between the family of the witnesses and Nathan Johnson's family. The officers also knew that Johnny Henderson, the brother of the complaining witness and the uncle of the other witness, was somehow involved in this dispute, but he was nowhere to be found, most likely because of the outstanding warrant for his arrest, another fact of which the officers were aware. The complaining witness's family had been involved with police calls before, while Nathan Johnson had no criminal record at all. Finally, the officers knew that the complaining witness's story was directly contradicted by Nathan's insistence that there were no women present on the porch when he drove by either time.

Unlike the situation in Sow, and McBride, supra, the information before the officers - if it

---

[2]The Court notes that some of these "facts" are disputed facts. Where they are disputed, they are presented in the light most favorable to the non-moving party.

was as Nathan and Dorothy describe it - goes not simply to a defense against the charges but directly to the existence of probable cause. The officers had information that called into question the reliability or truthfulness of the information on which the officers were basing their determination of probable cause. The information about the dispute between the two families was known but wholly disregarded by Ramirez in determining whether to arrest Nathan Johnson. The fact that there was a warrant out for Henderson, who had not come forward, should also have given pause to a prudent man.

If the only challenge to the reliability of this information was Nathan's insistence that there were only men on the porch, then the outcome of this motion would likely be different. That challenge, were it standing alone, would be very similar to the claims made in Sow and McBride, namely that there is a duty to investigate a defense. But here there was more, and as noted above, the "more" went to the very existence of probable cause.

Looking at the totality of the circumstances in the light most favorable to the Plaintiffs, it simply cannot be said as a matter of law that the officers' belief in probable cause was objectively reasonable, in other words that it was based on truthful and accurate information from various reliable sources. This is not to say that probable cause did not exist. It is to say that the existence of probable cause cannot be determined as a matter of law in this case, because it requires resolution of disputed facts. Resolution of disputed facts simply cannot be accomplished on a motion for summary judgment.

The motions for summary judgment as to the false arrest claim are DENIED.

**WARRANTLESS SEARCH OF CAR AND HOME**

SEARCH OF NATHAN'S CAR

The Fourth Amendment protects people from "unreasonable searches and seizures." Any search conducted without a warrant is deemed per se unreasonable, subject to certain exceptions. Two of those exceptions that are pertinent here allow police to search a vehicle incident to a lawful arrest, and to search any area of a vehicle in which evidence of criminal activity might be found, so long as there is probable cause to believe the vehicle contains evidence of criminal activity. Arizona v. Gant, ---U.S. ----, 129 S.Ct. 1710, 1721 (2009).

The search of Nathan's car cannot be characterized as a legitimate search incident to arrest. First, the outer bounds of this doctrine were carefully delineated in Gant, which made it clear that not any arrest will do to justify such searches. Where there is no possibility that an arrestee could reach into the area of the car that might contain the evidence or to remove weapons that might be used against the law enforcement officer, then there is no need for an exception to the warrant requirement. Gant, 129 S.Ct. at 1720-21.

Depending on when the search of Nathan's car actually took place, the car was parked and Nathan was either nowhere near it or he was handcuffed and in the physical custody of a number of police officers. There was no basis for concern about the safety of the officers.

With respect to the assertion that the officers had probable cause to believe that there was a weapon in the car, the same issues arise that came up in connection with probable cause for the arrest, namely the reliability of the information. Defendants rely on U.S. v. Clinton, 591 F.3d 968 (7th Cir. 2010) for the proposition that police may lawfully search "any area of the vehicle in which the evidence might be found" so long as there is probable cause to believe a vehicle contains

evidence of criminal activity."

Defendants' reliance on Clinton is misplaced, because in that case there were no questions of fact underlying the finding of probable cause. Defendants here assert that their information gave them the requisite probable cause for a warrantless search of Nathan's vehicle. But the only undisputed information they had was that Nathan had been driving on the street in question and he owned 2 guns, certainly not enough to conclude that he had broken any laws. Defendants gloss over questions about the reliability of all of the other information they possessed.

As I have already found, these disputes of fact prevent a finding of probable cause for Nathan's arrest. Those same questions arise with respect to probable cause for this search, and once again they prevent a finding of probable cause. Viewing the evidence in the light most favorable to the Johnsons, the Defendants had information that called into question whether any criminal activity had occurred at all. In light of those questions, it cannot be concluded as a matter of law that probable cause existed for a warrantless search of Nathan's vehicle.

I conclude that there are factual disputes that prevent entry of summary judgment on this claim. The motions for summary judgment as to the search of the vehicle are DENIED.

SEARCH OF THE JOHNSONS' HOME

A warrantless search of a persons' home is presumptively unreasonable unless the search falls within "one of a carefully defined set of exceptions." Coolidge v. New Hampshire, 403 U.S. 443 (1971). One of those exceptions is consent to search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)

The Defendants do not contend[3], for purposes of the pending motions, that Dorothy gave

---

[3]There is evidence from Ramirez that she gave verbal consent to the search. Because Dorothy vigorously denies that she was ever asked to consent, let alone that she actually gave

13

express consent to search[4] her home. They assert instead that, from her conduct, consent may be implied. Dorothy testified in her deposition that after talking to Ramirez and a desk sergeant, apparently about Nathan's statement that he owned two guns, she went into her house. Ramirez followed her, and she said nothing. She walked directly upstairs to the bedroom where Nathan's guns were kept, and she either retrieved them herself or showed Ramirez where they were so he could retrieve them, an uncertainty that is not material to this discussion.

Dorothy points to other facts that she contends negate any implicit consent. First, her husband had just been arrested, a fact that caused her to be afraid and intimidated. Second, she had gone outside when she realized what was happening, and was still in her night clothes. She claims the officers prevented her from going in to "put on some decent clothing." Finally she points out that none of the officers told her that she could deny them access or require them to get a warrant.

Consent may be manifested in a non-verbal as well as a verbal manner. U.S. v. Walls, 225 F.3d 858, 863 (7th Cir. 2000). It may be implied from the circumstances. U.S. v. Wesela, 223 F.3d 656, 661 (7th Cir. 2000). Consent must be voluntary; it cannot be the product of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); cited in U.S. v. Walls, 225 F.3d at 862. To determine if consent if voluntary, it is necessary to examine the totality of the circumstances. Id.

At no time did Dorothy show by either her words or her conduct that she was objecting to the search. While she may have been fearful inside, that fear was not manifested to the officers. Nothing that the officers did could reasonably be seen as coercive, and there was no physical

---

her consent, Defendants have assumed *arguendo* that there was not explicit consent.

[4]Defendants contend that what happened does not rise to the level of a search. No authority whatsoever is cited for that proposition. It is therefore not further considered by the Court in this Order.

intimidation. While there is no doubt that watching one's husband be arrested would be upsetting, that fact alone cannot be seen as coercing Dorothy into letting the officers enter her home to retrieve the weapons.

I find that no reasonable jury could conclude that the officers intimidated or coerced Dorothy into letting Ramirez enter her home. Her consent was implicit, and the search was therefore valid. The motions for summary judgment as to the search of the Johnsons' home are therefore GRANTED.

## CLAIMS AGAINST THE CITY

The City's motion for summary judgment simply adopts the motions of the two officers, because the claims against the City are merely claims for indemnification. In other words, the City cannot be liable if the officers are not liable. To the extent that the officers' motions are granted, so too is the City's motion.

## CONCLUSION

As stated herein, the Motions for Summary Judgment (#36, 37 and 38) are granted in part and denied in part. The claims remaining for trial are the unlawful arrest claim and the search of the vehicle claim. All other claims are dismissed.

This case remains set for final pretrial conference on March 16, 2011 and jury trial on April 11, 2011 A final pretrial order with all attachments including proposed jury instructions shall be brought to the pretrial conference. Any motions in limine shall be filed before the final pretrial conference, with responses due 7 days thereafter.

ENTERED ON March 4, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE